# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL NASCA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 11-cv-2822 |
| SWISSPORT CARGO SERVICES, INC., | ) |
| AIR FRANCE CARGO SERVICE, | ) |
| AIR FRANCE CARGO, AIR FRANCE, | ) |
| AFL-CARGO, SKY TEAM CARGO, and | ) |
| LAIRD TECHNOLOGIES, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Plaintiff's Renewed Motion for Leave to File a Second Amended Complaint. For the following reasons, the Court grants Plaintiff's motion and remands this case to the Circuit Court of Cook County, Illinois.

## BACKGROUND

On March 9, 2011, Plaintiff filed his First Amended Complaint against Defendants Swissport USA, Inc., Swissport Corporation, Swissport Cargo Services, Inc., Swissport Fueling Inc., Swissport CFE, Inc., Air France Cargo Service, Air France Cargo, Air France, AF-KL Cargo, Sky Team Cargo and Laird Technologies in the Circuit Court of Cook County, Law Division. (R. 1.1, State Court Complaint.) Count I of that Complaint alleges a negligence claim against the Swissport, Air France and Sky Team Defendants arising out of a forklift accident that occurred on or around February 4, 2009 at O'Hare airport. (*Id*.) Count II of that Complaint alleges a negligence claim against Laird Technologies related to an alleged slip and fall incident

at 1743 West Wilkens, Schaumburg, Illinois on September 3, 2009.[1] (*Id*. at 5-7.)

On April 27, 2011, Defendants removed the case to federal court based on federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (R. 1, Notice of Removal.) On May 4, 2011, Defendant Laird Technologies ("Laird") answered the Complaint and also filed a counterclaim against Defendants Swissport CFE, Inc., Swissport Cargo Services, LP, Swissport Corporation, Swissport Fueling, Inc., and Swissport USA, Inc. for contributory negligence. (R. 8 and 9.) On June 7, 2011, Swissport Cargo Services, LP filed an Amended Notice of Removal. (R. 19.) On July 18, 2011, the Court entered an agreed order dismissing Swissport, USA, Inc., Swissport Corporation, Swissport Fueling, Inc., and Swissport CFE, Inc. (R. 20.)

On August 23, 2011, Plaintiff filed a one-page motion for leave to file a second amended Complaint. (R. 25.) Specifically, Plaintiff sought to amend the complaint to 1) join Wilkening Court, L.L.C. ("Wilkening"), the alleged owner of the premises where Plaintiff was injured on September 3, 2009, as a defendant in this matter; 2) properly name Swissport Cargo Services L.P. as a defendant instead of Swissport Cargo Services, Inc.; and 3) properly name Societe Air France as a defendant. (*Id*.) On August 26, 2011, Laird, the lessee of the property where Plaintiff was injured on September 3, 2009, filed a three-page objection and response to Plaintiff's motion, in which it argued that the Court should deny Plaintiff's request to join Wilkening because 1) Plaintiff's motion was vague and improper as certain portions of the motion and the proposed Second Amended Complaint sought to add Dock & Door National, LLC as a defendant instead of Wilkening; and 2) based on the lease between Laird and

---

[1] Plaintiff clarified in his motion that the correct address of the property is 1751 Wilkening Court, Schaumburg, Illinois. Laird does not object to Plaintiff's typographical correction. (R. 35 at 1.)

Wilkening, which contains an indemnification clause and provides that Laird had responsibility for maintenance of the premises, Plaintiff does not have a cause of action against Wilkening. (*Id.*) On October 11, 2011, the Court denied Plaintiff's Motion for Leave to File a Second Amended Complaint without prejudice because the parties failed to provide sufficient information to allow the Court to conduct the required analysis. (R. 31.)

On October 21, 2011, Plaintiff filed a Renewed Motion for Leave to File a Second Amended Complaint, along with his proposed Second Amended Complaint ("SAC"). (R. 32, 32-1.) Plaintiff seeks to name the correct defendants (Swissport Cargo Services L.P., Societe Air France and Laird Technologies, Inc.) and to join Wilkening as a defendant. (R. 32.) Plaintiff also seeks leave to amend the address of Plaintiff's September 3, 2009 injury to 1751 Wilkening Court, Schaumburg, Illinois, in order to correct a typographical error. (*Id.*)

## LEGAL STANDARD

Complete diversity of citizenship is required for proper federal diversity jurisdiction, and a plaintiff may not join a non-diverse defendant simply to destroy diversity jurisdiction. *Schur v. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758, 763 (7th Cir. 2009). District courts have discretion to permit or deny post-removal joinder of a non-diverse party, and they should balance the equities to make this determination. *Id.* at 759. In considering whether to allow a plaintiff to join a non-diverse defendant after removal to federal court, courts must consider the following factors: 1) the plaintiff's motive for seeking joinder, particularly whether the purpose is to defeat federal jurisdiction; 2) the timeliness of the request to amend; 3) whether the plaintiff will be

significantly injured if joinder is not allowed; and 4) any other relevant equitable considerations. *Id*. at 763, n.10.[2]

"When joinder of a non-diverse party would destroy subject matter jurisdiction, 28 U.S.C. § 1447(e) applies and provides the district court two options: (1) deny joinder, or (2) permit joinder and remand the action to state court." *Schur*, 577 F.3d at 759 (citing 28 U.S.C. § 1447(e)). The court cannot permit joinder and retain jurisdiction. *Id.*

## ANALYSIS

In his motion, Plaintiff seeks leave to join Wilkening, a non-diverse entity,[3] as a Defendant in this matter. Plaintiff's proposed SAC alleges that Wilkening is the owner, operator and manager of the property where Plaintiff was injured on September 3, 2009 (the "Property") and that Wilkening was negligent by failing to keep the loading dock on the Property in a reasonably safe condition. (SAC Count IV, ¶¶ 4-17.) Laird objects to Plaintiff's motion on three grounds: 1) Plaintiff's proposed SAC is futile and improper based on the fraudulent joinder doctrine; 2) Plaintiff's request to amend is untimely and prejudicial; and 3) Plaintiff will not suffer any injury if the Court denies his motion.

---

[2] The post-removal joinder test is different than the test for an ordinary pretrial amendment to a complaint under Federal Rule of Civil Procedure 15(a). *Id.* at 759, n.3; *see also* Fed.R.Civ.P. 15(a)(2) ("[A] party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.")

[3] Plaintiff's proposed SAC does not allege the citizenship of Wilkening's members. "[F]or diversity jurisdiction purposes, the citizenship of a limited liability company is the citizenship of each of its members." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 247 (7th Cir. 2009). The lease between Wilkening and Laird states that Wilkening is an Illinois limited liability company. (R. 27-1.) Because Laird objects to Plaintiff's motion on the grounds that adding Wilkening would defeat the Court's federal diversity jurisdiction, the Court presumes that Wilkening's members are citizens of Illinois.

4

### I. Plaintiff's Motive

"Although a plaintiff is normally free to choose its own forum, it may not join an in-state defendant solely for the purpose of defeating federal diversity jurisdiction." *Schur*, 577 F.3d at 763 (citing *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999) and *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993)). Although not dispositive, one tool for "scrutinizing the plaintiff's motive for joining a nondiverse party" is the fraudulent joinder doctrine. *Schur*, 577 F. 3d at 764. To prove fraudulent joinder, "a defendant must demonstrate that, 'after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant.'" *Schur*, 577 F.3d at 765 (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) (emphasis in original)). "Framed a different way, the district court must ask whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant." *Schur*, 577 F.3d at 765 (citing *Poulos*, 959 F.2d at 73). A defendant faces a "heavy burden" to demonstrate that the joinder is fraudulent. *Schur,* 577 F.3d at 764. "[S]ome courts, including district courts within [the Seventh] [C]ircuit, have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Id*. (citing cases). In conducting the fraudulent joinder analysis, a district court must turn to state law to determine whether plaintiff has any reasonable possibility of success. *Id*.

It is well-settled in Illinois that a landlord is not liable for injuries caused by a defective or dangerous condition on premises leased to a tenant under the tenant's control. *See Gilley v. Kiddel*, 372 Ill. App.3d 271, 275, 865 N.E.2d 262, 266-67 (2d Dist. 2007). There are, however, several exceptions to this general rule, two of which are relevant to this case. *Id.* First, a

landlord may be liable if there is a latent defect on the leased property at the time of the leasing that the landlord should have known about. *Id.* Second, the landlord may be liable if he or she voluntarily undertook to render a service and performed the service negligently. *Id.*

    **A.**    **Voluntary undertaking**

In the proposed SAC, Plaintiff alleges that prior to September 3, 2009, Wilkening "performed repairs to the loading dock," "voluntarily undert[ook] to perform certain inspections and maintenance" of the loading dock, and breached its duty to Plaintiff by, among other things, failing to maintain the loading dock in a reasonably safe condition. (SAC Count IV, ¶¶ 8-11, 17.) According to Plaintiff, this is sufficient to state a negligence claim against Wilkening. Laird responds that Wilkening "did not control the premises and owed no duty to inspect or repair" the loading dock. (R. 35 at 3.) Laird also argues that Plaintiff has no evidence or other information to support his theory of liability and that, pursuant to the lease between Laird and Wilkening, Laird was responsible for keeping the Property in a reasonably safe condition. (*Id.* at 4-5.)

Under Illinois law, the mere relationship of landlord-tenant creates no duty on the part of the landlord to make repairs to the demised premises absent an express agreement binding him or her to make repairs or to maintain the property in good repair. *See Grimm v. Arnold*, 253 Ill. App.3d 404, 406-407, 624 N.E.2d 432, 433 (5th Dist. 1993); *see also Jones v. Fed. Home Loan Mortg. Corp.*, No. 97 C 5448, 2000 WL 335738, at *7 (N.D. Ill. Jan. 3, 2000) ("Under Illinois law, in determining whether a landlord has a legal duty to repair, the lease agreement between the parties controls.") (citation omitted). The lease between Wilkening and Laird (R. 27-1), provides that Laird has the duty to "keep the Premises in good repair and tenantable condition and shall promptly and adequately repair all damage to the Premises . . . under the supervision

and with the approval of Landlord . . . ." (*Id*. § 7.02.) This provision does not, on its own, create a duty on the part of Wilkening to make repairs to the Property. *See Gilley,* 372 Ill. App.3d at 276 ("there is no implied duty on a landlord to make repairs where the lease provision simply states that the lessee cannot make certain changes without obtaining the lessor's consent"); *see also Yacoub v. Chicago Park Dist.*, 248 Ill. App.3d 958, 961, 618 N.E.2d 685, 687-88 (1st Dist. 1993) (lessor's contractual right to approve any improvements made by lessee does not create a duty on the part of the lessor).

A duty on the part of Wilkening could arise, however, if it undertook to make repairs to the loading dock on the Property. *See Gilley*, 372 Ill. App.3d at 267; *Klitzka ex rel. Teutonico v. Hellios*, 348 Ill. App.3d 594, 598, 810 N.E.2d 252, 256 (2d Dist. 2004) (holding that a duty can arise on the part of the lessor when the lessor voluntarily undertakes to render a service). This is precisely what Plaintiff alleges Wilkening has done. (SAC ¶¶ 8-11, 17.) "[A] landlord who voluntarily undertakes to make repairs upon the leased premises is under a duty to use ordinary care in carrying out the work even though he is not under a legal obligation to make the repairs." *Grimm*, 253 Ill. App.3d at 406-407.

Laird argues that it has produced information regarding which entities performed repairs to the Property and on what dates, and that such information shows that Laird contracted with Dock and Door National, L.L.C. to make repairs after September 3, 2009. *See* R. 35-7. Those discovery requests, however, were directed to Laird only. Moreover, they answered the question of whether Laird had written documentation regarding repair to the loading dock or an agreement or contract with any person or entity to repair the premises. *See* R. 35-12 at 10. They did not answer the specific question of whether Wilkening performed repairs to the Property

7

before Plaintiff's injury.[4] Additionally, Plaintiff issued a subpoena to Dock and Door, pursuant to which Dock and Door confirmed that it did not perform any maintenance on the loading dock until *after* the September 3, 2009 injury.

Resolving all questions of fact and law in favor of Plaintiff, which the Court must do, Laird has not met its "heavy burden" of establishing that Plaintiff cannot recover against Wilkening. *Schur*, 577 F.3d at 764; *Destiny Health, Inc. v. Connecticut Gen. Life Ins. Co.*, 741 F. Supp.2d 901, 908-09 (N.D. Ill. 2010) (court must resolve all questions of law and fact in plaintiff's favor in fraudulent joinder analysis). Although Laird is correct that Plaintiff, at this time, has presented no specific evidence that Wilkening performed repairs to the loading dock, that fact alone does not preclude Plaintiff from adding Wilkening as a party. *See Delfosse v. Continental Cas. Co.*, No. 11-C-199, 2011 WL 2601277, at *2 (E.D. Wis. June 30, 2011) ("The purpose of the fraudulent joinder analysis . . . is not to conclusively resolve a claim on its merits but to assess whether there is any plausible basis for the claim being brought at all."); *Campbell v. LaFarge N. Am.*, 09-CV-346, 2009 WL 4674121, at *2 (despite defendants having to defend what may ultimately prove to be meritless claims against them, equities weighed in favor of granting plaintiff's motion).[5]

---

[4] The fact that Laird employees may have inspected and/or repaired the loading dock does not foreclose the possibility that Wilkening may also have done so.

[5] Plaintiff argues that the "likely result" of allowing Plaintiff to join Wilkening as a defendant will be a remand to state court followed by a successful motion for summary judgment on behalf of Wilkening. (R. 35 at 5.) The showing of a possibility that Plaintiff's claims, after discovery, may ultimately fail is not enough to meet Laird's burden of establishing that there is no reasonable possibility of Plaintiff establishing a claim against Wilkening.

### B. Wilkening's knowledge of the alleged defect

Plaintiff also alleges that through Wilkening's "periodic inspections and maintenance of the loading lock and property [prior to September 3, 2009] . . . Wilkening knew that the loading dock would get stuck and drop unexpectedly." (SAC Count IV, ¶ 12.) Laird does not substantively explain why it believes that these allegations fail to state a claim for negligence against Wilkening, other than to argue that Plaintiff has no evidence of Wilkening's knowledge. Laird concedes that if Wilkening knew of the alleged latent defect on the Property, it may be liable for negligence. (R. 35 at 3). As Plaintiff points out, he does not need to prove his case at this juncture. *See Delfosse*, 2011 WL 2601277, at *2; *Schur*, 577 F.3d at 766-67 (court determined, based on plaintiff's allegations, that plaintiff had "no reasonable possibility of success" against proposed non-diverse defendants). Although Plaintiff may not have any evidence of Wilkening's alleged knowledge at this point in time, he is entitled to the opportunity to pursue his claim against Wilkening to determine whether Wilkening knew about the alleged defect with the loading dock at the time it leased the Property to Laird. Resolving all issues of law and fact in Plaintiff's favor, Laird has not met its "heavy burden" of showing that Plaintiff cannot establish a claim against Wilkening.

### C. Plaintiff's decision not to join "potentially diverse" entities as defendants

Laird argues, without any citation to authority, that Plaintiff's decision not to join "potentially diverse" entities as defendants in this matter suggests that his motive in seeking to join Wilkening is to defeat the Court's diversity jurisdiction. (R. 35 at 5.) Specifically, Laird contends that Plaintiff could have sued Dock and Door, which repaired the loading dock after Plaintiff's injury, and Dock Leveler Manufacturing, Inc., the manufacturer of the loading dock.

9

Even if Laird's argument was relevant to the Court's motive analysis, Plaintiff has provided cogent explanations for why he did not seek to join Dock and Door and Dock Leveler. He avers that he did not seek to join Dock and Door because it provided repairs to the loading dock only after Plaintiff's injury, and he did not seek to join Dock Leveler because he believed he did not have a reasonable possibility of success against it. More importantly, however, Plaintiff's decision not to join additional diverse parties to this case is irrelevant to Plaintiff's motive because this case already involves *several* diverse defendants and is already in federal court. Therefore, adding additional diverse parties would not affect the Court's jurisdiction one way or the other.

Based on all of the above, Plaintiff has a legitimate belief of potential liability against Wilkening and therefore the Court cannot conclude that his motive in seeking to add Wilkening as a defendant is solely to defeat diversity jurisdiction. *See Darnell v. Hoelscher Inc.*, No. 09 cv 204 JPG, 2010 WL 3119425, at *3 (S.D. Ill. Aug. 4, 2010) (holding that a belief that a non-diverse defendant has "potential liability" to a plaintiff is "clearly a legitimate motive for wanting to bring a [non-diverse] party into a case").

## II. Timeliness

Plaintiff maintains that his proposed amended complaint is timely because he filed a motion for leave to add Wilkening on August 23, 2011, less than one month after learning through discovery that Wilkening owns the Property. (R. 32 at 5.) Laird responds that Plaintiff's motion for leave is untimely because Plaintiff's injury occurred on September 3, 2009, and he did not make any attempt to determine the owner of the Property between that date and July 29, 2011, which is the day Laird answered Plaintiff's discovery responses and identified

Wilkening as the owner of the Property.[6] (R. 35 at 8.)

The Seventh Circuit has stated that "an extensive delay between removal and a motion to amend typically weighs against permitting joinder." *Schur*, 577 F.3d at 767. Where a plaintiff seeks leave to join new defendants after learning of their involvement via discovery, however, the timing of the plaintiff's motion to amend often supports her position. *Id*. On the other hand, where a plaintiff seeks to join in-state defendants immediately after removal and without discovery, it suggests that the only motive for joinder is to destroy federal jurisdiction. *Id*.

Here, Plaintiff filed his motion less than four months after removal and shortly after discovering, via Laird's discovery responses, Wilkening's potential involvement in this action. Laird's argument that Plaintiff could have discovered the identity of the owner of the Property earlier than he actually did is unpersuasive. *Cf. Schur*, 577 F.3d at 767 (motion to amend was not untimely even though plaintiff filed it more than one year after she discovered the identity of the new defendants because plaintiff did not learn of their role in the case until after current defendant answered discovery). Plaintiff filed his First Amended Complaint in state court on March 9, 2011 and served it on March 28, 2011. (R. 1-1.) Defendants removed the case to federal court on April 27, 2011. (R. 1.) On May 24, 2011, the parties appeared before the Court for a status hearing, at which time the Court directed that the parties complete written discovery by August 15, 2011. (R. 15.) Laird answered Plaintiff's discovery requests on July 29, 2011.

---

[6] Laird responded to the requests on July 29, 2011, but Plaintiff presumably issued them much earlier.

Less than one month later, Plaintiff sought leave to add Wilkening as a defendant. There is nothing suspicious about this timing.[7] Therefore, it militates in favor of granting leave to amend.

## III. Whether the Plaintiff Will Be Significantly Injured if Joinder is Not Allowed and Other Equitable Considerations

### A. Statute of limitations

Plaintiff maintains that he will be prejudiced if he is not permitted to join Wilkening as a defendant. Specifically, he argues that if the Court denies his motion and testimony or other evidence later arises that Wilkening had undertaken to fix or inspect the loading dock, or that Wilkening knew about the faulty loading dock, Laird will be able to point the finger at Wilkening. This, Plaintiff contends, will significantly prejudice him as he could not then sue Wilkening separately because the statute of limitations has already expired. *See* 735 ILCS 5/13-202 (statute of limitations for personal injury actions in Illinois is two years). Laird does not respond to Plaintiff's argument.

The possibility that denying Plaintiff's motion may foreclose him from obtaining a remedy for his injury is a significant equitable consideration. The Court agrees that the risk of Plaintiff not being able to sue Wilkening at a later point in time, should the evidence reveal that Wilkening bears responsibility for his injury, weighs strongly in favor of granting his motion. *See Campbell v. LaFarge N. Am.*, 09-CV-346, 2009 WL 4674121, at *2 (fact that statute of limitations could bar plaintiff from suing proposed non-diverse defendant supported granting plaintiff's motion to join defendant); *see also Perez v. Arcobaleno Pasta Machs., Inc.*, 261 F.

---

[7] Laird argues that Plaintiff's delay caused it the "significant expense" of removing the case to federal court. The Notice of Removal is three pages long and, as Plaintiff notes, Laird did not file it—Swissport Cargo Services LP did. (R. 1.) Laird merely consented to the removal, which required signing a consent form. *See* R. 1-2.

Supp.2d 997, 1002 (N.D. Ill. 2003) (the defendant's "interest in the federal forum" does not outweigh the plaintiff's "interest in full recovery").

### B. Laird's duty to defend

Laird argues Plaintiff will not suffer any injury if the Court denies his motion because Laird has the duty to defend against Plaintiff's claims against Wilkening pursuant to §§ 14.01 and 25.08 of the lease. Laird contends that the "ultimate result of allowing Plaintiff to file suit against Wilkening Court will be a tender of defense to Laird's liability insurance carrier, which will have to defend two lawsuits." (R. 35 at 10.) Laird's argument is poorly articulated and irrelevant to the analysis. The fact that Laird's insurance carrier may have to pay for Wilkening's defense costs has absolutely no bearing on whether Plaintiff will suffer prejudice if the Court denies its motion.

## CONCLUSION

On balance, for all of the reasons explained above, the equities favor allowing Plaintiff to amend his complaint to proceed against Wilkening in the same action. *See Schur*, 577 F.3d at 758 ("[F]ederal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court."). Accordingly, the Court grants Plaintiff's motion and remands this case to the Circuit Court of Cook County, Illinois. Because the Court no longer has jurisdiction, it cannot rule on the merits of Plaintiff's motion for leave to amend to the extent it seeks to correct technical errors in the First Amended Complaint.

**Date:** December 8, 2011

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**